Patrick Q. Hall, Ca. Bar No. 97019
Law Offices of Patrick Q. Hall
402 West Broadway, Suite 1560
San Diego, California 92101
Telephone: (619) 268-4040
Fax: (619) 268-4041
pat@pqhlaw.com

Attorneys for Defendant
DONALD LINN DANKS

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

(Hon. Cynthia A. Bashant)

| UNITED STATES OF AMERICA, | CASE NO. 22-CR-2701-BAS-2 |
|---|---|
| Plaintiff, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RULE 29 MOTION FOR JUDGMENT OF ACQUITTAL** |
| vs. | |
| DONALD LINN DANKS, (2) | |
| Defendant. | Date: October 28, 2024<br>Time: 11:00 a.m. |

**I.**

**<u>INTRODUCTORY STATEMENT</u>**

In the context of this motion for a judgment of acquittal on Counts One and Two of the indictment pursuant to Rule 29 of the Federal Rules of Criminal Procedure, it is important to emphasize both the procedural history of this case and the specific factual allegations of the indictment to determine whether the evidence presented by the Government at trial was sufficient to prove the offenses charged in the indictment, and not some other variant offense. From the outset, Mr. DANKS and Mr. DESTLER contended that the indictment was insufficient on its face to state an offense. In particular,

1  Mr. DANKS asserted that the "failure of both counts to detail factual information relating
2  to the alleged "pump and dump" scheme rendered the indictment insufficient under the
3  Due Process Clause and Rule 7." Dk. 78. Mr. DESTLER subsequently raised a similar
4  argument. Dk 90. Mr. DANKS alternatively filed a motion for a bill of particulars seeking
5  more specific information about the nature of the offenses. Dk 79.

6        Count One of the Indictment charged Mr. DANKS, along with David Stephens,
7  Jonathan Destler, and Robert Lazerus with a conspiracy beginning on a date unknown to
8  the grand jury, but no later than October 3, 2014, and continuing until on or about
9  February 3, 2022, to commit securities fraud in violation of Title 15, United States Code,
10 Sections 78j (b), 78ff, Title 17, Code of Federal Regulations, Section 240.l0b-5 and Title
11 18, United States Code, Section 371.

12       Count One specifically incorporated a number of "Introductory Allegations",
13 which included the following pertinent averments:

14       "11. ***A pump-and-dump scheme was a fraudulent scheme that***
15       ***typically involved the artificial inflation of the stock price*** and
16       trading volume of a publicly-traded company ***(the "pump") so that***
17       ***individuals who control a substantial portion of the company's stock***
18       ***can sell shares of that stock at artificially high prices to other***
19       ***investors (the "dump")***. Generally, such schemes effected the
20       artificial inflation in a stock's share price by, among other things,
21       issuing news releases and/or promotional materials regarding the
22       company and its stock – often containing false, misleading, or
23       exaggerated information - and/or by engaging in manipulative trading
24       of the stock to affect its price and generate the appearance of demand
25       for the shares." (Indictment, page 3.) (Emphasis added).

26     After incorporating this general description of a pump and dump scheme, Count
27 One of the Indictment goes on to allege that the defendants:

28

>"did knowingly and intentionally conspire to commit an offense against the United States, that is, securities fraud, namely, to knowingly and willfully, directly and indirectly, by the use of the means and instrumentalities of interstate commerce and of the mails, use and employ manipulative and deceptive devices and contrivances in connection with the purchase and sale of securities by (a) employing devices, schemes and artifices to defraud, (b) making and causing to be made untrue statements of material fact, and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading,…" (Indictment, page 5.)

Similarly, Count Two of the indictment incorporates Paragraphs 1-15 of the Introductory Allegations. Count Two alleges the substantive offense of securities fraud with virtually the same conclusory language. Count Two, in relevant part alleges the defendants:

>"…did knowingly and willfully, directly and indirectly, by the use of the means and instrumentalities of interstate commerce and of the mails, use and employ manipulative and deceptive devices and contrivances in connection with the purchase and sale of securities issued by LOOP Industries, Inc., in violation of Title 17, Code of Federal Regulations, Section 240.l0b-5, by (a) employing devices, schemes and artifices to defraud, (b) making and causing to be made untrue statements of material fact, and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon any persons, including

members of the investing public and sellers and purchasers of LOOP's securities." (Indictment, page 16.)

Mr. DANKS contended that Count Two also did not particularly identify the acts, practices and courses of business which operated as a fraud and deceit on members of the investing public. The jury in this case was clearly not unanimously convinced that there was any pump and dump scheme established in this case. No reasonable jury could find beyond a reasonable doubt the allegations of this indictment and this court should grant the motion for a judgment of acquittal.

## II.

## ARGUMENT

Rule 29 of the Federal Rules of Criminal Procedure provides in relevant part:

> **(a) Before Submission to the Jury.** After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction. The court may on its own consider whether the evidence is insufficient to sustain a conviction. If the court denies a motion for a judgment of acquittal at the close of the government's evidence, the defendant may offer evidence without having reserved the right to do so.

In *American Tobacco Co. v. United States*, 328 U.S. 781, 787, n.4 (1946), the Supreme Court first stated the standard for reviewing the sufficiency of the evidence:

> The verdict in a criminal case is sustained only when there is 'relevant evidence from which the jury could properly find or infer, beyond a reasonable doubt,' that the accused is guilty.

Since *American Tobacco*, the Ninth Circuit has articulated the test for determining whether to grant motion for judgment of acquittal under Rule 29 as whether at the time

of the motion, viewing the evidence in the light most favorable to government, there is relevant evidence from which the jury can reasonably find the accused guilty beyond a reasonable doubt of each element of crime charged. *United States v. Brandon*, 633 F.2d 773 (9th Cir. 1980); *United States v. Dior*, 671 F.2d 351 (9th Cir. 1982).

"The prosecution, however, must present substantial evidence as to each element of the offense from which a jury could find the accused guilty beyond a reasonable doubt." *Brown v. Davis*, 752 F.2d 1142, 1145 (6th Cir. 1985).

"Substantial evidence is more than a scintilla. It means such relevant evidence as a reasonable mind might accept to support a conclusion. It is evidence affording a substantial basis of fact from which the fact in issue can be reasonably inferred." *United States v. Martin*, 375 F.2d 956, 957 (6th Cir. 1967).

Where the evidence is at least as indicative of innocence as guilt, the Court must direct a verdict of acquittal. *United States v. Berger*, 224 F.3d 107, 116 (2d Cir. 2000).

With respect to Count One, the Government was required to present evidence on each element of conspiracy:

> First, beginning no later than October 3, 2014 and ending on or about February 3, 2022, there was an agreement between two or more persons to commit securities fraud.
>
> Second, the Defendant joined in the agreement knowing of its purpose and intending to help accomplish that purpose.
>
> Third, one of the members of the conspiracy performed at least one overt act on or after October 3, 2014, for the purpose of carrying out the conspiracy. (Court's Jury Instruction No. 14)

Here, the evidence presented of the defendants' joining in an agreement, knowing of its purpose and intending to help accomplish that purpose, (knowing and willful involvement in a conspiracy to commit securities fraud, to wit: a pump and dump organized by David Stephens) was virtually non-existent. Notwithstanding Steven

Bajic's testimony that David Stephens approached him and that he engaged in assisting Mr. Stephens in concealing his ownership interest in LOOP stock through approximately twelve entities, there was absolutely no evidence presented to establish that Mr. DANKS had any knowledge of Mr. Stephens or Mr. Bajic's actions. First, Mr. Bajic testified that he had no direct contact with any of the defendants tried in this case. He did not meet in person, talk to, or even have any text or email communications with Mr. DANKS. He therefore, could not possibly have known whether Mr. DANKS knew of Mr. Stephens' actions in concealing his ownership.

Second, there were only three emails introduced to show any possible connection between Mr. DANKS and the actions by Mr. Stephens. The first was Exhibit 304, in which Mr. DESTLER introduced David Stephens to Daniel Solomita on October 3, 2014. In that email:

> I'd like to introduce Dave Stephens, a close contact of ours and the principal representing a public shell candidate we are looking to secure. Dave is quite interested in this transaction and we'd like to provide him some more detail on the technology. To that end, could you please send him the NDA so we can get him access to the video demonstration and additional materials.

Mr. Danks is cc'd on this email and there is nothing to suggest that there has been any discussion by either Mr. DESTLER, Mr. DANKS or even Mr. Stephens relating to Mr. Stephens' control of nominee entities, much less any language which would support a reasonable inference that Mssrs. DANKS, DESTLER and/or Stephens had any discussions about concealing ownership interests as part of a pump and dump scheme.

The only other emails were those introduced during the cross-examination of Mr. DANKS, during the defense case, one referencing Kenneth Ciapala, and one in 2017 in which Mr. Stephens is trying to get LOOP to lift the restriction on stock. There was not any evidence presented at trial suggesting that Mr. DANKS had any knowledge or understanding of who Kenneth Ciapala was. More importantly, the 2017 email was three

1  years after the alleged beginning of the conspiracy and was entirely consistent with Mr.
2  DANKS' role as a director on the board for LOOP helping stock owners legitimately lift
3  restrictions on their stock.  There were no texts, or emails purporting to explain how Mr.
4  DANKS possibly knew of the eleven entities purportedly controlled by Stephens and
5  identified in Exhibit 619 as having stock ownership of LOOP stock:

6      Tamarind Investments
7      Sienna Institute
8      Jackson Bennet LLC
9      Soloman AG
10     Mediapark
11     Rocas Limited
12     First Capital AG
13     Belair Partners LLC
14     Humberg AG
15     Norfolk Heights
16     Quezon Group

17     Once the existence of a conspiracy is established, evidence establishing beyond a
18 reasonable doubt a connection of a defendant with the conspiracy, even though the
19 connection is slight, is sufficient to convict him with knowing participation in the
20 conspiracy.  The word "slight" properly modifies "connection" and not "evidence." It is
21 tied to that which is proved, not to the type of evidence or the burden of proof.  *United*
22 *States v. Dunn*, 564 F.2d 348, 357 (9th Cir. 1977) ; *United States v. Lopez*, 625 F.2d 889,
23 895 (9th Cir. 1980).

24     "The government has the obligation to establish not only the opportunity but also
25 the actual meeting of minds.  Mere association and activity with a conspirator does not
26 meet the test." *United States v. Basurto*, 497 F.2d 781, 793 (9th Cir. 1974);
27 *United States v. Lopez*, 625 F.2d 889, 896 (9th Cir. 1980).
28

   Significantly, notwithstanding the voluminous texts and emails Mr. DANKS sent to practically everyone, there were no texts or emails suggesting that Mr. DANKS had any knowledge of Mr. Stephens' true ownership of stock in LOOP or that he knowingly involved himself in a conspiracy to pump and dump LOOP stock intending to accomplish that purpose. There were no texts or emails supporting the inference that there was even an agreement between the three defendants on trial. *United States v. Willner*, 795 F.3d 1297, 1310 (11th Cir. 2015)("Even if Dr. Abreu knew of the conspiracy, there is no evidence in the record proffered to us by the Government that Dr. Abreu willfully joined and participated in it.")

   In sum, the Government's evidence was insufficient to establish all three elements of the charged conspiracy.

   Likewise, the Government failed to present evidence from which a reasonable jury could find that Mr. DANKS engaged in securities fraud as alleged in Count Two.

   In order to convict the defendants of securities fraud, the Government was required to present evidence on each element of securities fraud:

> "First, the defendant willfully:
> - used a device or scheme to defraud someone,
> - made an untrue statement of a material fact,
> - failed to disclose a material fact that resulted in making the defendant's statements misleading, or
> - engaged in any act, practice, or course of business that operates or would operate as a fraud or deceit upon any person,
>
> with all of you agreeing as to the act undertaken, statement made or failure to disclose;
>
> Second, the defendant's acts were undertaken, statement was made, or failure to disclose was done in connection with the purchase or sale of Loop Industries, Inc. stock;

    Third, the defendant directly or indirectly used the wires in connection with these acts, making this statement, or this failure to disclose;

    Fourth, the defendant acted knowingly; and

    …

    "Willfully" means intentionally undertaking an act, making an untrue statement or failing to disclose ***for the wrongful purpose of defrauding or deceiving someone.***" (Court's Jury Instruction 17)(emphasis added).

  Here, as with Count One, Mr. DANKS respectfully contends that the Government's evidence was lacking on each and every element. The indictment was originally clearly based on the theory that Allen Brennan was the victim of the defendants' actions. However, the evidence at trial overwhelmingly refuted any inference that Allen Brennan was a victim of anything. To the contrary, the testimony of even his daughter-in-law questioning his purchase of a La Jolla residence late in life, suggested that he did it for tax purposes and that he was an extremely sophisticated investor. The evidence also established that Allen Brennan's investment in LOOP stock netted his estate at least two million dollars.

  It is anticipated that the Government will respond that the evidence presented at trial proved that the defendants' used multiple manipulative acts, practices, or courses of business that acted as a fraud or deceit on some hypothetical person—certainly not Kenneth Rogers who had no interaction with any of the defendants and certainly did not invest based on anything they said. The Government presented several exhibits which suggested that Mr. DANKS was actively attempting to get LOOP "uplisted" to NASDAQ. Exhibits 43 and 707. However, the testimony of all witnesses was that this action alone, was a legitimate business strategy for a company to pursue.

  Next, the Government will undoubtedly argue that Mr. DANKS communicated with Robert Lazerus repeatedly about material non-public information and encouraged Mr. Lazerus to communicate with Daniel Solomita about material non-public

1 information. It should initially be emphasized that repeatedly during the trial, the Government represented that this was not an insider trading case. However, a close examination of these emails and texts refutes the Government's contention that this was the means by which the defendants were participating in a pump and dump scheme. For example, Exhibit 477, referenced an impending announcement of a deal between LOOP and Coca Cola on November 29, 2018. However, contrary to the Government's claim that the defendants were using this information to improperly solicit investors, the actual wording of the text is instructing Mr. Lazerus to contact investors "on the back of the CocaCola" announcement—clearly meaning after the information was publicly disclosed. The reference to getting "all hands" to participate, was a completely lawful encouragement to potential investors and not based upon any improper use of insider information. The text clearly does not support an inference that Mr. DANKS was "intentionally undertaking an act, making an untrue statement or failing to disclose for the wrongful purpose of defrauding or deceiving someone." He wanted to contact investors after the press release was made public—not before.

Likewise, the Government's exhibits, 464, 633, 457, and 648 do not support an inference that Mr. DANKS had a wrongful purpose. In Exhibit 457, Mr. DANKS even reminds Mr. Lazerus about a non-disclosure agreement, which at a minimum suggests that he was confused about whether Mr. Lazerus had signed such an agreement. However, significantly, Mr. DANKS did not believe Mr. Lazerus was *trading* on the non-public information and he said so in his communication. None of these exhibits supports the Government's purported purpose of using confidential non-public information as a mean to unlawfully pump up LOOP stock.

Similarly, the Government introduced numerous exhibits to arguably support the inference that Mr. DANKS was providing confidential information to the investor F. Scott Jackson, Exhibits 646, 643, 432, 429, 431, 437, 417, and 434. Exhibit 646 expressly references the fact that Mr. Jackson had a non-disclosure agreement. This reference

refutes any inference that Mr. DANKS was disclosing the information for a fraudulent purpose. He thought he was sharing it with an insider. Additionally, the timing of all of these emails corresponded directly to efforts by "shorters" to drive the price of LOOP stock down. Exhibit 2131, introduced during the defense case, highlighted the time frames when extensive efforts and huge volumes of stock were being shorted. For example, Exhibits 429 and 431 were dated at the end of October and beginning of November 2019. Exhibit 2131 established that in October 2019, approximately 550,000 shares of LOOP were being shorted and the price was being artificially driven down from over $12/share to under $10/share. As a strategic advisor to the company, Mr. DANKS had a fiduciary duty to the company to try to help it fend off short attacks which were not based upon any bad news or underperformance by the company. In other words, he had a duty to help defend the company against artificial and fraudulent deflation of the stock price.

Exhibits 417 and 434 were dated on October 12, 2020 and later on March 3, 2021, when the stock was still "tanking" in response to illegal activity by the Hindenburg group. There was no reasonable inference the jury could draw other than Mr. DANKS's communications to Jackson were part of his efforts to sustain the company.

Furthermore, the series of emails and texts presented by the Government referencing the need to close at a certain price were all legitimate efforts by Mr. DANKS to protect the company. Exhibits 470, 651, 307, 467, and 465 (involving a different company), all represented efforts to enlist others to purchase stock to fend off the short attacks. None of these emails or texts involved some sort of manipulative or deceptive device—all were directly asking the company's investors to purchase stock to stop the decline in price forced by the actions of short-sellers. None of them were fraudulent and certainly none were intended to defraud anyone.

Finally, the testimony regarding Ventanas Capital LLC, did not prove Mr. DANKS had any intent to defraud anyone. The uncontradicted testimony at trial was that Mr.

DANKS still cared for Michelle Fiore and was simply trying to help her by giving her stock in LOOP and several other companies. The proceeds from the sale of that LOOP stock did not benefit Mr. DANKS, but rather were used for the daily expenses of Ms. Fiore, who after multiple horrific events in her life, needed financial assistance.

None of these emails, texts or events supported the Government's inference that they were made or undertaken as part of a fraudulent pump and dump scheme. Similarly, Mr. DANKS' repeated sloppiness in describing his association with the various Touchstone entities cannot support an inference of fraudulent intent.

"Evidence of a mistake in judgment, an error in management, or carelessness cannot establish fraudulent intent." *United States v. Willner*, 795 F.3d 1297, 1309 (11th Cir. 2015)

In *United States v. Cassese*, 428 F.3d 92, 98 (2d Cir. 2005), the Second Circuit upheld the District Court's granting of the defendant's Rule 29 motion in a securities fraud prosecution. In concluding that the Government did not adduce sufficient evidence to prove beyond a reasonable doubt that Cassese believed that he was acting unlawfully, the court stated:

> To begin, we note that although civil liability follows from any violation of the securities laws regardless of whether the violation was willful, in order to establish a criminal violation of the securities laws, the Government must show that the defendant acted willfully. 15 U.S.C. § 78ff(a). This Court has defined willfulness as "a realization on the defendant's part that he was doing a wrongful act" under the securities laws, *United States v. Peltz*, 433 F.2d 48, 55 (2d Cir. 1970), in a situation where the "'the knowingly wrongful act involved a significant risk of effecting the violation that has occurred,'" *Metromedia Co. v. Fugazy*, 983 F.2d 350, 364 (2d Cir. 1992) (quoting Peltz, 433 F.2d at 55).

*United States v. Cassese, Id.* at 98.

The court went on to state:

> Since few events in the life of an individual assume the importance of a criminal conviction, we take the "beyond a reasonable doubt" requirement with utmost seriousness. Here, we find that the Government's evidence failed to reach that threshold. As discussed above, viewed singly, each of the areas of proof by the Government was characterized by modest evidentiary showings, equivocal or attenuated evidence of guilt or a combination of the three. More importantly, when the evidence is viewed in its totality, the evidence of willfulness is insufficient to dispel reasonable doubt on the part of a reasonable fact finder. Viewed in the light most favorable to the prosecution, the evidence, at best, gives "equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence," and thus "a reasonable jury must necessarily entertain a reasonable doubt." *Glenn*, 312 F.3d at 70.

*Id*. at 103.

Here, there was insufficient evidence presented on each element of the offense especially in light of the offenses that were charged. It bares repeating that the indictment charged Mr. DANKS with:

> ***A pump-and-dump scheme was a fraudulent scheme that typically involved the artificial inflation of the stock price*** and trading volume of a publicly-traded company ***(the "pump") so that individuals who control a substantial portion of the company's stock can sell shares of that stock at artificially high prices to other investors (the "dump")***.

There was no evidence that Mr. DANKS ever artificially inflated the stock so that he could "sell shares of that stock at artificially high prices to other investors." At the time of this indictment, the uncontradicted testimony was that Mr. DANKS still owned approximately 1.3 million shares of LOOP stock. (Exhibit 1250 and testimony of Daniel

1  Rondeau).  There was no evidence presented that any of the actions referenced above
2  were undertaken so that Mr. DANKS or anyone else could sell their shares of stock at
3  artificially high prices to other investors.   There was no evidence to suggest that Mr.
4  DANKS agreed with any known or unknown conspirator to unlawfully pump up the stock
5  of LOOP or to dump it.  Most importantly, on the element of willfulness and knowledge,
6  there was no evidence to suggest that any of Mr. DANKS' actions were intended to
7  defraud anyone.  For these reasons, Mr. DANKS respectfully requests that the court enter
8  a judgment of acquittal as to Count One and Two.

10  Dated: September 16, 2024                    Respectfully submitted,

                                                  s/ *Patrick Q. Hall*
                                                 Patrick Q. Hall
                                                 Attorney for Defendant
                                                 DONALD LINN DANKS